IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RALPH MCMORRIS,

       Plaintiff,                  CIVIL ACTION NO.

VS.

TIMOTHY WOLFORD;
In his individual and official capacity,

       Defendant

---

John H. Bredell
BREDELL AND BREDELL
State Bar No: P 36577
119 North Huron Street
Ypsilanti, MI 48197
Ph: (734) 482-5000
Fx: (734) 487-7000
jbredell@bredell.com

---

# PLAINTIFF'S COMPLAINT

# and

# DEMAND FOR JURY TRIAL

# PLAINTIFF'S COMPLAINT

NOW COMES, the Plaintiff, RALPH MCMORRIS, by and through his attorneys, BREDELL AND BREDELL, P.C., and for his Complaint against the named Defendant, alleges as follows:

## I. INTRODUCTION AND NATURE OF THE ACTION

1.    This is an action brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. §1988, by the Plaintiff against the Defendant, Timothy Wolford, who at the time was a Michigan Department of Corrections Absconder Recovery Officer.  The claim is based on Defendant Wolford's use of excessive and unreasonable force, and unlawful seizure, all wrongful acts occurring under the color of state law and within the course and scope of Defendant's employment with the State of Michigan Department of Corrections.

2.    Said acts, described below, resulted in personal injuries and damages to Plaintiff, Ralph McMorris, and deprived the Plaintiff of his federal protected right to be free from unreasonable seizure and unreasonable force, in violation of the United States Constitution under the Fourth and Fourteenth Amendment. of the United States Constitution, and in violation of his civil rights pursuant to 42 U.S.C. §1983.

## II.  JURISDICTION AND VENUE

3.      This action is brought pursuant to 42 U.S.C. § 1983 and §1988 and the Fourth
        Amendment to the United States constitution, made applicable to Defendant
        through the Fourteenth Amendment to the United States Constitution.  This Court
        has jurisdiction over Plaintiff's claims under 28 U.S.C. §1331 (federal question)
        and under 28 U.S.C. 1343(3) (civil rights).

4.      Venue lies in the United States Eastern District of Michigan, Southern Division,
        as the district in which the claim arose pursuant to 28 U.S.C. §1391(b)

## III.  PARTIES

5.      Plaintiff, Ralph McMorris, is a citizen of the United States, and a resident of
        Ortonville, MI, located in Oakland County, MI.

6.      On information and belief, Defendant, Timothy Wolford,  sued individually and in
        his official capacity, is an employee of the State of Michigan, Michigan
        Department of Corrections.  He is employed and  operates as an Absconder
        Recovery Officer for the Michigan Department of Corrections, and does so in
        Oakland County, Michigan.  The acts and omissions complained of herein arise
        from the conduct of Defendant, Timothy Wolford, while he was acting under the
        color of state law, and each act and omission was committed pursuant to
        Defendant Wolford's employment and authority as an Absconder Recovery
        Officer for the Michigan Department of Corrections.

## IV. STATEMENT OF FACTS

7.    On or about August 11, 2017, Plaintiff's, Ralph McMorris, ["McMorris"] was

      married to Sherrie Medlock, who was on parole, and under the supervision of the

      Michigan Department of Corrections.

8.    As part of Sherrie Medlock's terms of parole, she was required to wear a GPS

      tether, and was not allowed any contact with McMorris.

9.    Despite this no-contact provision in her parole, on the morning of  August 11,

      2017, she violated terms of the parole by showing up, uninvited,  at Mr.

      McMorris's home, located at 540 North Brandt Street, Ortonville, MI.

10.   At that time, Mr. McMorris contacted Sherrie Medlock's parole officer at the

      Michigan Department of Corrections, Agent Zimmerman, and alerted her to the

      situation, advising that  Sherrie Medlock was at his premises, in violation of the

      terms of parole

11.   Agent Zimmerman instructed Mr. McMorris to drive Sherrie Medlock to the

      Pontiac Parole Department, located at 2001 Centerpoint Parkway, Suite 101,

      Pontiac, MI 48341 so as to deliver Sherrie Medlock to the authorities.

12.   Mr. McMorris complied with the instructions of Agent Zimmerman.

13.   At the time of the incident, Mr. McMorris had a two year old daughter who could

      not be left home alone.  He put his toddler in her car seat, in the back seat.

14.    Sherrie Medlock voluntarily and cooperatively entered the vehicle to allow Mr.

      McMorris to take her to the Pontiac Parole Department.

15.     Upon leaving his residence, Mr. McMorris noticed two vehicles on the street.
        Because Mr. Mr. McMorris had notified Agent Zimmerman, and because Agent
        Zimmerman had instructed Mr. Mr. McMorris to bring in Sherrie Medlock, Mr.
        Mr. McMorris   thought that in these vehicles there may have been either been
        police or MDOC officers, possibly there to collect Sherrie Medlock.   However,
        he did not know this to be a fact, and no individuals from said vehicles exited or
        otherwise attempted to contact Mr. McMorris.

16.     No individuals from the vehicles contacted him, addressed him, or otherwise
        prevented him from departing in his car, and leaving the residence.

17.      Upon leaving his residence, Mr. McMorris did notice that the vehicles were
        following his vehicle, but again, did not stop him or otherwise indicate that he
        should stop his vehicle.

18.     On the way to the Parole Department, Mr. McMorris stopped at the Bank of
        America, located at 7990 Ortonville Road, Ortonville, MI, to cash a check.   He
        needed the cash so that he could obtain gas to drive Sherrie Medlock to the
        Pontiac Parole Department, located on Center Point Parkway, in Pontiac,
        Michigan.

19.     Mr. Mr. McMorris entered the bank, leaving Sherrie Mr. McMorris and his two
        year old daughter in the car.

20.     Upon exiting the bank, Mr. Mr. McMorris noticed that Defendant Wolford, was
        handcuffing Sherrie Medlock, who was at the hood of his vehicle.

Page 5 of  23

21.   Mr. Mr. McMorris also noticed two other officers, who, were also Absconder Recovery
      Officers, and were gathered around his vehicle.

22.   More importantly, Mr. Mr. McMorris noticed that one of the officers, but not Defendant
      Wolford, had his gun drawn out of the holster.

23.   Mr. McMorris was extremely alarmed to see that the officer had his gun drawn, and this
      officer was standing adjacent to the car where his toddler was sitting.

24.   Upon encountering this scene, Mr. McMorris had a reasonable and justifiable concern
      that his toddler could be shot, injured or killed, should the officer, for any reason, decide
      to, and be in a position to, begin intentionally or accidentally firing at Sherrie Medlock,
      or at Mr. McMorris.

25.   Mr. Mr. McMorris had a reasonable and justifiable concern that his toddler could be shot,
      killed, or injured, if the officer was unaware of the toddler, and intentionally by mistake,
      or accidentally injured her.

26.   Upon seeing this, Mr. McMorris verbally alerted all three officers to the fact that his
      toddler was in the vehicle, and asked that the gun be put away. He also advised them that
      he had been in the process of taking Sherrie Medlock to the Pontiac Parole Office.

27.   Mr. McMorris had every right both as a parent, and under the First Amendment, to
      inform Defendant Wolford and the other officer that his toddler was in a car, particularly
      where a weapon had been drawn.

28.   Mr. Mr. McMorris had every right and responsibility as a parent to verbally express his
      concerns to Defendant Wolford and the other officers in such a manner that he could be
      sure they heard him, to make them aware of the toddler, so they would not shoot the

toddler either in intentional or accidental firing of weapons, or should they discern

movement in the car, and inadequately assess the situation and open fire on Mr.

McMorris's toddler.

29.     In response to Mr. McMorris's advising them both of the presence of his daughter, and of

the fact that he had been taking Sherrie Medlock to Pontiac Parole, Defendant Wolford,

replied: "Mr. McMorris, shut the fuck up."

30.     Mr. McMorris, more alarmed, repeated that his child was in the back seat of the vehicle.

31.     Defendant Wolford replied: "Shut the fuck up."

32.     Mr. McMorris did not verbally or physically threaten any officer, and there was no

provocation or threats of any kind by Mr. McMorris prior to the following unlawful acts.

33.     Defendant Wolford did not have any reasonable fear, whatsoever, of imminent bodily

harm at any time during any events.

34.     Without any warnings of any nature, and for no justifiable or valid reason, Defendant

Wolford moved away from Sherrie Medlock, rushed up to Mr. McMorris and fired his

taser directly at Mr. McMorris, hitting him in the upper abdomen, incapacitating and

immobilizing him.

35.     When a body is tased, the prongs of a taser send electricity directly into muscle fibers and

cause them to contract uncontrollably.  Typically the electrodes fire 50,000 volts of

electricity at 19 shocks a second into the body sending uncoordinated electrical pulses to

the  brain. The electrical weapon overrides the brain's control of the body. The electrical

current jolts through their nervous system making the muscles tense and the electrical

pulses from the brain unreadable.  Due to the number of impulses being received at such a

short time, the brain cannot process the information and essentially shuts down, creating a condition of neuromuscular incapacitation.  Repeated applications increases the risk of death or serious injury.

36.  Mr. Mr. McMorris responded to the taser by becoming neuromuscularly incapacitated, and  falling face first onto the ground, completely incapacitated.

37.  Once upon the ground, Defendant Wolford slammed the incapacitated Mr. McMorris' head on the ground, handcuffed him, and otherwise battered him in the process.

38.  Once on the ground, while Mr. McMorris was incapacitated, Defendant Wolford put his knee in the middle of Mr. McMorris' back, and said to him words to the effect: "You're an asshole, and you've always been an asshole."

39.  Without any provocation by Mr. McMorris, who was incapacitated from the first tasering, Defendant Wolford then tased Mr. McMorris a second time.

40.  Although Defendant Wolford had no provocation, and no reason to suspect Mr. McMorris of any wrong doing or illegal activity, he continued to wrongfully seize and detain Mr. McMorris, roughly handling and battering him.

41.  After he was twice tased and handcuffed, Defendant Wolford roughly raised Mr. Mr. McMorris up by grabbing his arms from behind and pulling him up by his arms, further battering him.

42.  Defendant Wolford asked Mr. McMorris if he had any warrants out against him.

43.  Once able to reply, Mr. McMorris replied no, and upon confirmation, Mr. McMorris was released from handcuffs.

44.   Defendant Wolford instructed one of the other officers who was present to go into the
bank and obtain a bucket of water to wash the blood off of the sidewalk, as the Plaintiff
was bleeding from the face and hands onto the ground.

45.   There is no evidence that Mr. McMorris was attempting to assault, batter or attack any
officer or any individual at the time he was first initially unlawfully tased.

46.   There is no evidence that Mr. McMorris was attempting to assault, batter or otherwise do
anything other than lie on the ground, incapacitated, being unlawfully battered by
Defendant Wolford, when he was unlawfully tased the second time.

47.   At no time did  Mr. McMorris do anything other than advise the officers that he had been
in the process of taking Sherrie Medlock to the Parole Office, and verbally warn
Defendant, Wolford, and the other two officers, that his toddler was in the vehicle .

48.   At no time did Mr. McMorris attempt to interfere with the arrest of Sherrie Medlock.
After all, Mr. McMorris himself had been in the process of taking Sherrie Medlock to the
officials pursuant to the instructions of Agent Zimmerman.

49.   At no time did Mr. McMorris threaten, resist or act in any way to justify Defendant
Wolford's initial use of the taser, and second use of the taser once Wolford had
incapacitated Morris by the initial use of the taser.

50.   Mr. McMorris posed no risk to Defendant Wolford, or any other officer or person in the
immediate area.

51.   Mr. McMorris did not attempt to harm Defendant Wolford, or any other person in the
area.

52.   Mr. McMorris was not committing a crime, nor could he have been reasonably believed

to have been committing a crime at the time of the incident.

53.    There is no evidence that Defendant Wolford, or the other two officers present at the

scene were in danger of imminent death or great bodily harm, and no reasonable officer

would have thought otherwise.

54.    Defendant Wolford failed to act as a reasonable  officer would have acted under same or

similar circumstances.  A reasonable officer would not, without justification and the need

to do so, have used excessive and unreasonable force as described above, without legal

justification.

55.    Defendant Wolford was not justifiably provoked when he tasered Mr. McMorris in the

abdomen simply because Mr. McMorris was properly and appropriately warning

Defendant Wolford of his toddler being in the vicinity where a gun had been drawn.

56.    Mr. McMorris posed zero threat to Defendant Wolford after being tased on the first

occasion, incapacitated, and after Wolford slammed his head on the ground.  The second

taser also constituted excessive and unreasonable use of force under the circumstances.

57.    Defendant Wolford's actions were not objectively reasonable as they were designed to

inflict excessive and unreasonable force in needlessly tasing and wrongfully electrically

restraining Mr. McMorris in a situation that was not life threatening or necessary.

58.    The double tasering and battering of Mr. McMorris was wholly unjustified, and

constituted excessive and unreasonable force.

59.    The incapacitation, and handcuffing and detaining of Mr. McMorris, constituted unlawful

seizure and detainment of Mr. McMorris.

60.    Mr. McMorris's injuries were caused by the wrongful acts of Defendant Wolford.

## V.

## COUNT I:  VIOLATION OF 42 USC §1983:

**FIRST CLAIM FOR RELIEF:**
**EXCESSIVE FORCE AND UNLAWFUL SEIZURE**
**AND DETAINMENT IN VIOLATION OF THE FOURTH**
**AND FOURTEENTH AMENDMENT**

61.    Plaintiff incorporates by reference paragraphs 1 through 46 as if fully set forth herein.

62.    The Civil Rights Act, codified as 42 U.S.C. §1983, provides as follows:

> Every person who, under the color of any statute, ordinance,
> regulation, custom or usage, of any state or territory or the District
> of Columbia, subjects or causes to be subjected, any citizen of the
> United States or any other person within the jurisdiction thereof to
> the deprivation of any laws, privileges or immunities secured by
> the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity or other proper proceeding for
> redress....

63.    Plaintiff in this action is a citizen of the United States, and the Defendant to this claim is

a person for purposes of 42 U.S.C. §1983.

64.    Defendant Wolford, at all times relevant hereto, was acting under the color of state law in

his capacity as an Absconder Recovery Officers, for the Michigan Department of

Corrections, State of Michigan, and his acts or omissions was conducted within the scope

of his official duties.

65.    At the time of the complained of events, Plaintiff had a clearly established constitutional

right under the Fourth Amendment to be secure in his person from unreasonable seizure

and from unreasonable use of excessive force.

66.  Plaintiff also had the clearly established Constitutional right under the Fourteenth Amendment to bodily integrity and to be free from excessive force by officers.

67.  Plaintiff also had the clearly established Constitutional right under the Fourteenth Amendment to be free from unreasonable and unlawful seizures and detainment of his person.

68.  Any reasonable officer knew, or should have known, of these rights at the time of the complained of conduct as they were clearly established at that time.

69.  Defendant Wolford's actions, and use of force, as described in this complaint, were objectively unreasonable in light of the facts and circumstances confronting them, and violated the Fourth Amendment rights of Plaintiff.

70.  Defendant Wolford's actions and use of force, as described herein, were also malicious, and/or involved reckless, callous and deliberate indifference to Mr. McMorris's federally protected rights.

71.  The use of force by Defendant Wolford shocks the conscious and violates the Fourth and Fourteenth Amendment rights of Plaintiff.

72.  Defendant Wolford had no reasonable fear of any imminent bodily harm when he tased Mr. Mr. McMorris.

73.  Defendant Wolford had no reasonable belief that any other person was in danger of imminent bodily harm when he tased Mr. Mr. McMorris.

74.  Defendant Wolford's actions were objectively unreasonable, balancing the amount of force used against any need for use of force, particularly as there was no need at all for any use of force.

75.   The use of force constituted deadly force in that it could have caused Plaintiff's death.

76.   Therefore, Defendant Wolford subjectively and objectively unreasonably used potentially deadly force, and excessive force, while acting under the color of state law, and violated Plaintiff's rights under the Fourth and Fourteenth amendments to the United States Constitution, causing him personal injuries.

77.   Defendant Wolford unlawfully seized Mr. McMorris, by means of objectively unreasonable, excessive and conscious shocking physical force, thereby unreasonably restraining Plaintiff of his freedom.

78.   The force used constituted deadly force in that it could have caused death, and did cause bodily injury.

79.   Defendant Wolford's tasering and incapacitating Mr. McMorris, constituted unlawful seizure of his person, and unlawful detainment.

80.   Defendant Wolford's handcuffing and detaining Mr. McMorris, constituted unlawful seizure of his person, and unlawful detainment.

81.   Defendant Wolford engaged in the conduct described by this Complaint wilfully, maliciously, in bad faith, and in reckless disregard of Mr. McMorris' federally protected constitutional rights.

82.   Defendant Wolford did so with shocking and wilful indifference to Plaintiff's rights and, did so with conscious awareness that it would cause Plaintiff physical and emotional injuries.

83.   Defendant Wolford seized when, by means of physical force and use of the taser, Mr. Mr. McMorris' freedom of movement was restrained.

84. In the circumstances surrounding the incident, he was certainly not free to leave, as his body had been completely incapacitated, and afterwards he was handcuffed.

85. A reasonable person would not believe that he was free to leave, even if he could have, which Mr. Mr. McMorris couldn't have due to the incapacitation.

86. Defendant Wolford unlawful literally and legally seized and detained the Plaintiff, with no probable cause and no objective reasonable basis for his actions, violating his clearly established right to be free from unreasonable seizure under the Fourth Amendment and the Fourteenth Amendment to the United States Constitution.

87. The acts and omissions of Defendant Wolford described herein intentionally deprived Plaintiff of his constitutional rights and caused him other damages.

88. Defendant Wolford is not entitled to qualified immunity for the complained of conduct.

89. As a proximate result of Defendant Wolford's unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein, entitling him to compensatory and special damages, in amounts to be determined at trial.

90. As a further result of Defendant Wolford's unlawful conduct, Plaintiff has incurred special damages, including medically related expenses, and other special damages, in amounts to be established at trial.

91. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. 1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

92. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant Wolford, under 42 U.S.C. §1983, in that

the actions of Defendant Wolford were undertaken maliciously, wilfully, and/or with

reckless or wanton disregard of the constitutional rights of Plaintiff.

## VI

### COUNT II:  VIOLATION OF 42 USC §1983:

### SECOND CLAIM FOR RELIEF

### RACIAL DISCRIMINATION IN VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT AND 42 USC 1981

93.    Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth

herein.

94.    42 U.S.C. §1983 provides that:

> Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

95.    Plaintiff in this action is a citizen of the United States and Defendant Wolford is a person

for purposes of 42 U.S.C.  §1983.

96.    Defendant Wolford, at all times relevant hereto, was acting under the color of state law in

his capacity as an Absconder Recovery Officer for the Michigan Department of

Corrrections, and his acts or omissions were conducted within the scope of his official

duties or employment

97.     At the time of the complained of events, Plaintiff had the clearly established
        constitutional right to be free from racial discrimination in law enforcement by officers,
        and to enjoy the equal protection of the laws.

98.     Title 42 U.S.C. §1983 (§1981) provides, in pertinent part:

>       (a) All persons within the jurisdiction of the United States, shall
>       have the same right in every State and Territory to make and
>       enforce contracts, to sue, be parties, give evidence, and to the full
>       and equal benefit of all laws and proceedings for the security of
>       persons and property as is enjoyed by white citizens, and shall be
>       subject to like punishment, pains, penalties, taxes, licenses, and
>       exactions of every kind, and to no other.

99.     Plaintiff, as an African American, is a member of a protected class, and thus also had the
        clearly established statutory right under this provision of 42 U.S.C. §1981 to be free from
        racially motivated beatings and detentions.

100.    Any reasonable officer knew, or should have known, of these rights at the time of the
        complained of conduct, as they were clearly established at that time.

101.    Plaintiff's race was a motivating factor in the decisions to use excessive force in the
        complained of acts.  Defendant's conduct was undertaken with the purpose of depriving
        Plaintiff of the equal protection and benefits of the law, equal privileges and immunities
        under the law, and due process in violation of the Fourteenth Amendment and 42 U.S.C.
        §1981.

102.    Defendant engaged in the conduct described in this Complaint wilfully, maliciously, in
        bad faith, and in reckless disregard of Mr. Mr. McMorris's federally protected rights.

103.    The acts of omissions of Defendant Wolford were the moving forces behind Plaintiff's
        injuries.

104.   The Acts or omissions of Defendant Wolford as described herein intentionally deprived Plaintiff of his constitutional and statutory rights and caused him other damages.

105.   Defendant is not entitled to qualified immunity for the complained of conduct.

106.   As a proximate result of Defendant's unlawful conduct, Plaintiff has suffered actual physical and emotional injuries, and other damages and losses as described herein, entitling him to compensatory and special damages, in amounts to be determined at trial.

107.   As a further result of the Defendant's unlawful conduct, Plaintiff has incurred special damages, including medically related expenses, and other special damages, in amounts to be established at trial.

108.   Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest, and costs as allowable by federal law. There may also be special damages for lien interests.

109.   In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant Wolford under 42 U.S.C. §1983, in that the actions of Defendant Wolford were taken maliciously, wilfully, and/or with a reckless or wanton disregard of the constitutional and statutory rights of Plaintiff.

## VII.

### COUNT III:  42 U.S.C. §1983

### RETALIATION IN VIOLATION OF THE FIRST AMENDMENT

110.  Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

111.  42 U.S.C. §1983 provides that:

> Every person who, under the color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

112.  Plaintiff in this action is a citizen of the United States and Defendant Wolford is a person for purposes of U.SC. §1983.

113.  Defendant Wolford, at all times relevant hereto, was acting under the color of state law in his capacity as an Absconder Recovery Officer for the Michigan Department of Corrections, and his acts or omissions were conducted within the scope of his official duties or employment.

114.  At the time of the complained of events, Plaintiff had the clearly established constitutional right to be free from retaliation for the exercise of protected speech.

115.  Any reasonable officer knew or should have known of this right at the time of the complained of conduct as it was clearly established at that time.

116.  Mr. Mr. McMorris exercised his constitutionally protected right to question law enforcement and/or engaged in protected speech related to the constitutional rights of

citizens with respect to objectionable or dangerous police conduct.

117. Defendant Wolford wanted to silence Mr. McMorris, and his intention to deprive Mr. McMorris of his constitutionally protected right to free speech was explicitly clear as he twice told Mr. McMorris to: "shut the fuck up."

118. Defendant Wolford did, in fact, silence Mr. McMorris by incapacitating him by twice tasering him.

119. Retaliatory animus for Mr. Mr. McMorris' exercise of his constitutionally protected right to speak to the Officer, particularly out of concern for his toddler, was a substantially motivating factor in the excessive force used by Defendant Wolford.

120. Excessive force used against Mr. Mr. McMorris in retaliation for his protected conduct.

121. Defendant Wolford used this force as means of retaliation for his protected speech, and twice tasered Mr. Mr. McMorris to "shut [him] the fuck up."

122. Defendant Wolford is liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking use of force.

123. Defendant Wolford engaged in the conduct described in this Complaint wilfully, in bad faith, with racial animus and in reckless disregard of Mr. Mr. McMorris' federally protected constitutional rights.

124. The acts or omissions of Defendant Wolford were the cause and proximate cause, and moving forces behind Plaintiff's injuries.

125. The acts or omissions of Defendant Wolford as described herein intentionally deprived Plaintiff of his constitutional and statutory rights, and caused him other damages

.

126.   Defendant Wolford is not entitled to qualified immunity for the complained of conduct.

127.   Defendant Wolford's unlawful conduct, caused and proximately caused Plaintiff to suffer actual physical and emotional injuries, and other damages and losses as described herein, entitling him to compensatory and special damages, in amounts to be determined at trial.

128.   As a further result of the Defendant Wolford's unlawful conduct, Plaintiff has incurred special damages, including medically related expenses, and other special damages in amounts to be established at trial.

129.   Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 USC §§1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

130.   Defendant Wolford denied Mr. McMorris his rights of freedom of speech, in violation of the First Amendment of the United States Constitution,  by tasering Mr. McMorris so as to "shut [him] the fuck up", and using a taser to silence Mr. McMorris,  and to take away Mr. McMorris's ability speak, and right to free speech, to inform Wolford of his deep concern about guns being drawn around his toddler in an effort to protect his child.

131.   Defendant Wolford denied Mr. McMorris's  right to be free from  cruel and unusual punishments inflicted, in violation of the Eighth Amendment of the United States Constitution, both for 1) wrongfully tasering Mr. McMorris who was merely cautioning Defendant that his child was in the vehicle and advising of the fact that he had been taking Sherrie Medlock to the parole department, and 2) wrongfully tasering the incapacitated Mr. McMorris, and slamming his head on the ground and battering him while he was incapacitated.

132.   The force used by Defendant Wolford was unnecessary, excessive and unreasonable under the circumstances, as Plaintiff posed no immediate threat to the safety of anyone, including the Defendant and the other two officers who were present.

133.   Defendant Wolford, on information and belief, embarked on a willful, malicious, reckless and outrageous course of conduct that was wrongfully and racially motivated and intended to cause, and did in fact cause, Plaintiff Mr. McMorris to suffer extreme physical pain, and extreme fear, mental, psychological and emotional distress.

134.   As a cause and proximate cause and results of these Constitutional violations by Defendants, Plaintiff Mr. McMorris sustained damages as more fully set forth in the "Damages" section of this complaint, below.

135.   In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Defendant Wolford, under 42 U.S.C. §1983, in that Defendant Wolford's actions have been taken maliciously, wilfully, and/or with a reckless or wanton disregard of the constitutional rights of Plaintiff.

## VIII.  DAMAGES

136.   Plaintiff incorporates all allegations as if fully set forth herein.

137.   As a result, cause and proximate cause of the above actions of Defendant, Plaintiff sustained personal injuries and damages, including but not limited to:

   a.   Multiple abrasions and soft tissue injures to his body, including head, face, knees, hands, and back, with resulting sequella;

   b.   Injuries and abrasions to his face, in which a methicillin-resistant staphylococcus

aureus (MRSA) infection developed;

c. Shock, literally and figuratively;

d. Fright and mental anguish;

e. Emotional distress;

f. Temporary loss of freedom of movement, literally and figuratively;

g. Incapacitation;

h. Pain,  suffering and humiliation;

i. Medical expenses;

j. Statutory attorney fees and costs;

k. Other injuries as reflected in Plaintiff's medical records, incorporated by reference;

l. Other injuries as become manifest, and/or as become known in the course of discovery.

## IX: ATTORNEYS FEES

138. Plaintiff is entitled to recover attorney's fees and costs as required by the Civil Rights Attorneys Fees Award Act of 1976, 79 U.S.C. § 1988.  Plaintiff thereby request that the Court and the jury award their attorney's fees and expenses.


## X:  JURY DEMAND

139. Plaintiff respectfully demands a trial by jury pursuant to Fed R. Civ. P. 8(b)

## XI:  PRAYER FOR RELIEF

WHEREFORE, as to all counts above, incorporated herein by reference,  Plaintiff prays

that this Court enter judgment for Plaintiff, and against the Defendant, for actual damages above

the jurisdictional maximum of the court, and grant:

a)      Compensatory and consequential damages, including those damages set forth in

paragraph 137, above, and damages on all claims as allowed by law in an amount

to be determined at trial.

b)      Economic losses on all claims allowed by law;

c)      Special damages in an amount to be determined at trial;

d)      Exemplary and punitive damages on all claims allowed by law against the

Defendant, in an amount to be determined at trial;

e)      Attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988,

including expert witness fees, on all claims allowed by law;

f)      Pre- and post-judgment interest at the lawful rate; and

g)      Any further relief that this Court deems proper, and any other appropriate relief at

law and equity.

Respectfully submitted:

BREDELL AND BREDELL, P.C.

By: /s John H. Bredell
State Bar No:  (P36577)
jbredell@bredell.com
119 North Huron
Dated: June 13, 2018                    Ypsilanti, MI 48197
Phone: (734) 482-5000
Fax: (734) 487-7000